DISTRICT COURT OF THE VIRGIN ISLANDS
                    DIVISION OF ST. THOMAS AND ST. JOHN


                                           )
UNITED STATES OF AMERICA,                  )
                                           )
            Plaintiff,                     )
                                           )
     v.                                    )
                                           )
GELEAN MARK,                               )
VERNON FAGAN,                              )  Criminal No. 2006-80
WALTER ELLS,                               )
DORIAN SWAN,                               )
KELVIN MOSES,                              )
KERRY WOODS, and                           )
CRAIG CLAXTON,                             )
                                           )
            Defendants.                    )
_____)

**ATTORNEYS:**

**Kim R. Lindquist, AUSA**
St. Thomas, U.S.V.I.
     *For the plaintiff,*

**David E. Nichols, Esq.**
St. Thomas, U.S.V.I.
     *For defendant Gelean Mark,*

**Michael L. Sheesley, Esq.**
St. Thomas, U.S.V.I.
     *For defendant Vernon Fagan,*

**Carl R. Williams, Esq.**
St. Thomas, U.S.V.I.
     *For defendant Walter Ells,*

**Gregory H. Hodges, Esq.**
St. Thomas, U.S.V.I.
     *For defendant Dorian Swan,*

**Andrew L. Capdeville, Esq.**
St. Thomas, U.S.V.I.
    *For defendant Kelvin Moses,*

**Darren John-Baptiste, Esq.**
St. Thomas, U.S.V.I.
    *For defendant Kerry Woods,*

**Susan Moorehead, Esq.**
St. Thomas, U.S.V.I.
    *For defendant Craig Claxton.*

## ORDER

**GÓMEZ, C.J.**

Before the Court are Defendant Gelean Mark's ("Mark") motions to dismiss the indictment in the above captioned matter ("Redball II") on grounds that prosecution of the charges therein would violate the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution. In his first motion, Mark alleges that Count Two of the instant indictment violates his protection from double jeopardy because he was previously convicted of Count Eighteen of the indictment in *U.S. v. Mark, et al.*, Criminal No. 2005-76 ("Redball I"). Mark argues that Count Two of Redball II and Count Eighteen of Redball I constitute the same importation conspiracy.

A hearing was held on the motion on March 23, 2010. At that hearing the Court invited the parties to file supplemental briefs and took the matter under advisement. Only the government filed a supplemental brief.

In his second motion, which was filed on May 21, 2010 (the same date on which the Court now issues its opinion), Mark alleges that Count Two of the instant indictment violates his protection from double jeopardy because he was previously acquitted of Count One of the indictment in *U.S. v. Gelean Mark and Jerome Blyden*, Criminal No. 2009-20 ("the RICO case"). Mark claims that Count Two of Redball II is a lesser included offense of Count One of the RICO case.

For the reasons stated below, the Court will deny the motions.

## I. FACTS

On October 6, 2005, the grand jury returned an indictment in Redball I against Mark, and five co-defendants (collectively, the "Redball I Defendants"). Thereafter, the grand jury returned a superseding indictment, and, on December 19, 2006, a second superseding indictment (the "Redball I Indictment").

Count Eighteen of the indictment in Redball I states:

> Beginning from a time unknown, but no later than November 2004, and continuing until November 2005, at St. Thomas in the District of the Virgin Islands and elsewhere, defendants Gelean Mark [and] . . . Vernon Fagan . . . did knowingly and intentionally, combine, conspire, confederate, and agree together with each other . . . to import controlled substances into the United States from a place outside thereof . . . .

(*Id.* at 8.) The conspiracy charged in Count Eighteen involved the importation of cocaine and crack.

On December 19, 2006, the government filed the indictment in this matter against Mark, and eight co-defendants (collectively, the "Redball II Defendants"). Subsequently, the government filed a superseding indictment (the "Redball II Indictment").

Count Two of the Redball II indictment states:

> Beginning from a time unknown, but no later than 1999, and continuing until October 2005, at St. Thomas in the District of the Virgin Islands and elsewhere, defendants Gelean Mark [and] Vernon Fagan did knowingly and intentionally, combine, conspire, confederate, and agree together with each other and with other persons known and unknown to the grand jury . . . to knowingly and intentionally import into the United States from . . . Tortola, British Virgin Islands, controlled substances . . . .

(*Id.* at 7.) The only controlled substance allegedly involved in Redball II was cocaine.

The trial in Redball I commenced on March 5, 2007. The trial ended in a mistrial on March 27, 2007. After much procedural activity, including appellate review, the retrial of Redball I commenced on February 3, 2009. Among other counts, Mark was found guilty on Counts One and Eighteen on February 10, 2009.

The trial in Redball II commenced on September 5, 2007. On October 1, 2007, the jury returned a verdict of guilty with respect to Mark on Count One. The jury was unable to reach a unanimous verdict as to Mark and his co-defendants on Counts Two and Fourteen. On October 3, 2007, the Court declared a mistrial

as to Mark in Counts Two and Fourteen.

Mark presently moves to dismiss Count Two of the Redball II Indictment on double jeopardy grounds.

## II. DISCUSSION

The Double Jeopardy Clause protects criminal defendants from later prosecutions for the same offense. *See* U.S. CONST. amend. V ("[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb."). In a jury trial, Double Jeopardy rights do not attach until the jury is empaneled and sworn. *Gómez v. United States,* 490 U.S. 858 (1989).

## III. ANALYSIS

### A. Redball I and II

Mark asserts that the indictments in Redball I and Redball II allege the same conspiracies. Mark contends that, in light of his conviction on Count Eighteen of the Redball I Indictment, re-trial of Count two of the Redball II Indictment would violate the Double Jeopardy clause.

Courts apply a "totality of the circumstances" test to double jeopardy claims involving successive conspiracy indictments. *See United States v. Smith*, 82 F.3d 1261, 1271 (3d Cir. 1996); *United States* v. *Becker*, 892 F.2d 265, 268 (3d Cir. 1989); *United States* v. *Liotard*, 817 F.2d 1074, 1077-78 (3d Cir. 1987). Under this standard, double jeopardy bars re-trial on

drug conspiracy charges if the "totality of the circumstances" demonstrates that the conspiracies alleged in successive indictments are actually a single agreement. *See Smith,* 82 F.3d at 1267 ("[T]he fact that the Kentucky indictment here alleges a conspiracy to commit mail fraud while the New Jersey one alleges a conspiracy to transport in interstate commerce the proceeds of a fraud is wholly unimportant if the evidence indicates that there was but one agreement to defraud [a company] utilizing both the mails and the interstate transportation of funds."); *Liotard*, 817 F.2d at 1077-78 ("Proper weight must be given to consideration of whether the overt acts alleged in the first conspiracy charge were carried out in furtherance of the broad agreement alleged in the second indictment or whether these acts were carried out in furtherance of a different agreement." (citations and quotations omitted)).

In determining whether the government has alleged one or more agreements under the "totality of the circumstances" test, it is appropriate to consider the following four factors: "(a) the '*locus criminis*' of the alleged conspiracies; (b) the degree of temporal overlap between the conspiracies; (c) the overlap of personnel between the conspiracies, including unindicted co-conspirators; and (d) the similarity in the overt acts charged and role played by the defendant in each indictment." *Smith,* 82

F.3d at 1267-68 ("[W]e must look to the entire record before the district court in examining the totality of the circumstances to determine if the conspiracies alleged in the two indictments truly are different agreements."). "The ultimate purpose of the totality of the circumstances inquiry is to determine whether two groups of conspirators alleged by the government to have entered separate agreements are actually all committed to the same set of objectives in a single conspiracy." *Id*. at 1271.

If the defendant makes the requisite showing of interdependence with respect to the above four factors, "he is entitled to a pretrial evidentiary hearing to adjudicate his double jeopardy claim." *Id.*

The *locus criminis* of the conspiracy alleged in Count Eighteen of the Redball I Indictment is the same general location alleged in Count Two of the Redball II Indictment, "the District of the Virgin Islands and elsewhere." (Second Superseding Indictment 8, Redball I, Dec. 19, 2006; Superseding Indictment 7, Redball II, Dec. 19, 2006.)

The conspiracy charged in Redball I allegedly occurred from November, 2004, through October, 2005. The conspiracy charged in the Redball II Indictment spanned from approximately 1999, until October, 2005.

Notwithstanding the overlap in the locations and time

periods, the conspiracies alleged in the Redball I and II indictments have different participants and different overt acts.

Count Two of Redball II charges Mark, Walter Ells ("Ells"), and Vernon Fagan ("Fagan"). However that count incorporates count one, identifying Henry Freeman, Everette Mills ("Mills"), Glenson Isaac ("Isaac"), Dorian Swan ("Swan"), Craig Claxton ("Claxton"), Kelvin Moses ("Moses"), and Kerry Woods ("Woods") as co-conspirators.

Count Eighteen of Redball I incorporates by reference counts one through 17 of that indictment. Count Eighteen charges Mark, Mills, Fagan, Allen Dinzey and Alexi Emmanuel. By incorporating other counts, Count Eighteen also lists known coconspirators as Dave Blyden, Keith Francois, Royd Thompson, Andrew Williams, Tyrone Alexander Prince, and Leon Boodoo. Both conspiracies charge Mark, Ells, and Fagan. However, Count Two of Redball II alleges that seven other persons were involved that Redball I does not. Further, Count Eighteen of Redball I alleges that six conspirators were involved that Redball II does not.

Count two of Redball II refers to 12 overt acts, all but three of which involve sales of marijuana, cocaine or crack. The remaining three overt acts include possession and delivery of narcotics. Count Eighteen of Redball I refers to twelve overt acts, all of which allege aiding and abetting and possession with

intent to distribute cocaine. The overlap between the overt acts alleged is not substantial.

At its core, the double jeopardy inquiry requires the Court to ask whether the objectives of the two conspiracies were different. The purported goal of the conspiracy charged in Count Eighteen in Redball I was to possess large quantities of cocaine, crack, and marijuana with intent to distribute the drugs on the streets of St. Thomas for financial gain. "Most often, the members of the conspiracy imported the drugs from outside the territory of the Virgin Islands, packaged the drugs for individual sale, and distributed the same in the Savan area of St. Thomas, U.S. Virgin Islands." (Second Superseding Indictment 2, Dec. 19, 2006.) The goal of the conspiracy charged in Count Two of Redball II was to possess large quantities of cocaine for distribution in New York and North Carolina for financial gain. "Most often, the members of the conspiracy imported the drugs from outside the territory of the Virgin Islands, and distributed the same through the Cyril E. King Airport on various aircrafts for distribution within various states in the mainland United States." (Superseding Indictment 2, Dec. 19, 2006.)

Because Redball I and Redball II allege different agreements with different objectives, double jeopardy will not bar the re-trial of Count Two of Redball II. *See, e.g., United States v.*

*Becker*, 892 F.2d 265, 268 (3d Cir. 1989) (holding that a temporal overlap alone did not show a single conspiracy for Double Jeopardy purposes because the successive indictments alleged "two different objectives and agreements, and hence two conspiracies").

Finally, this issue has already been considered by the Third Circuit. Indeed, when Mark first raised this issue almost two years ago the Third Circuit noted:

> Mark is correct in his assertion that there is significant overlap in the locations, time periods, and participants in the two conspiracies alleged in this case. However, we find it determinative that the conspiracies had different objectives. As the District Court concluded, the conspiracy alleged in Redball I aimed "to possess large quantities of cocaine, crack, and marijuana with intent to distribute the drugs on the streets of St. Thomas for financial gain," App. 17, while the goal of the conspiracy alleged in Redball II was "to possess large quantities of cocaine for distribution in New York and North Carolina for financial gain." [App.] at 18.

*United States v. Mark*, 284 Fed. Appx. 946, 949 (3rd Cir. 2008).

The Third Circuit compared Mark's challenge to a similar challenge that it had rejected:

> In *Becker*, this Court compared a conspiracy to grow and distribute marijuana with a conspiracy to smuggle and distribute foreign-grown marijuana. The defendant in *Becker* was convicted in Pennsylvania of conspiracy to possess with intent to distribute marijuana in Pennsylvania, New Jersey, and Massachusetts. He argued that a prior conviction in West Virginia for conspiracy to manufacture and distribute marijuana barred the Pennsylvania conviction. The time periods alleged in the two indictments overlapped, but this Court found it

>    crucial that while the object of the West Virginia conspiracy had been to manufacture and possess with intent to distribute, the Pennsylvania indictment charged that the objects of that conspiracy were to smuggle, store, and distribute marijuana. Consequently, "[t]hese were two different objectives" and "hence two conspiracies." 892 F.2d at 268. Likewise, the substantive objectives of the two conspiracies here are distinct and reveal two agreements. Redball I alleged a conspiracy involving a street-level operation in St. Thomas distributing cocaine, crack cocaine, and marijuana, while Redball II alleged a conspiracy to import cocaine from the British Virgin Islands for subsequent distribution in the continental United States. *See also United States v. Chiattello*, 804 F.2d 415 (7th Cir. 1986) (holding that two conspiracies existed where the first indictment was for a conspiracy to buy marijuana in Mississippi and the second indictment involved a scheme to smuggle marijuana from Colombia and distribute it in Indiana).

*United States v. Mark*, 284 Fed. Appx. At 949-50. The Circuit ultimately rejected Mark's argument, plainly stating that "Mark has not made the requisite double jeopardy showing." *Id.* at 950. The result here can be no different, as Mark has raised the same double jeopardy issue that has been considered and rejected by this Court and the Third Circuit.

### B. The RICO case and Redball II

Mark's also contends double jeopardy bars the prosecution of Count Two of Redball II because it is a lesser included offense of Count One of the RICO case. Count One of the RICO case included "Conspiracies to Import and Distribute Cocaine," and further charged that:

>    GELEAN MARK, the defendant, committed the following

>acts of racketeering, either of which constitutes the commission of Racketeering Act One:
>
>    a. Beginning from a time unknown, but no later than 1999, and continuing until October 2005, in the District of the Virgin Islands and elsewhere, GELEAN MARK did knowingly and intentionally, combine, conspire, confederate, and agree together with others known and unknown to the grand jury, to violate Title 21, United States Code, Sections 952(a) and 960(b)(1)(B)(ii), that is, to import narcotics into the United States from a place outside thereof, namely, five (5) kilograms or more of a mixture or substance containing detectable amounts of cocaine . . . .
>    b. Beginning from a time unknown, but no later than 1999, and continuing until October 2005, in the District of the Virgin Islands and elsewhere, GELEAN MARK did knowingly and intentionally, combine, conspire, confederate, and agree together with others known and unknown to the grand jury . . . to knowingly and intentionally possess with intent to distribute narcotics, namely five (5) kilograms or more of a mixture or substance containing detectable amounts of cocaine . . . .

(Superseding Indictment ¶ 8, RICO case, Oct. 1, 2009.)

In assessing whether the double jeopardy prohibition applies, the Court must compare the statutes under which Mark was previously charged with the statute in the current indictment and determine whether each requires "proof of a fact which the other does not," such that Mark can be prosecuted under both. *See Blockburger*, 284 U.S. at 304. "The elements of the offense are compared in the abstract, without looking to the facts of the particular case." *Gov't of the Virgin Islands v. Bedford*, 671 F.2d 758, 765 (3d Cir. 1982) (citations omitted).

Count One of the RICO case charged Mark with violating 18

U.S.C. § 1962(c). To establish such a RICO violation, the government must prove the following four elements: "'(1) the existence of an enterprise affecting interstate commerce; (2) that the defendant was employed by or associated with the enterprise; (3) that the defendant participated, either directly or indirectly, in the conduct or the affairs of the enterprise; and (4) that he or she participated through a pattern of racketeering activity.'" *United States v. Urban*, 404 F.3d 754, 769 (3d Cir. 2005) (quoting *United States v. Irizarry*, 341 F.3d 273, 285 (3d Cir. 2003)); *see also United States v. Console*, 13 F.3d 641, 653 (3d Cir. 1993) (same).

Count Two of Redball II charges Mark with conspiring to import cocaine in violation of 21 U.S.C. §§ 952(a), 960(b)(1)(B)(ii) and 963. In order to prove the conspiracy to import cocaine, the government must to show (1) that a conspiracy to import controlled substances was entered into by two or more persons, and (2) that at some time during the existence or life of the conspiracy, the defendant knew the purpose of the conspiracy, and, with that knowledge, deliberately joined the conspiracy.

A conspiracy conviction therefore requires proof of an agreement to import a controlled substance, as well as proof that the defendant joined the agreement. No such proof is required

for a RICO conviction.  Moreover, a RICO conviction requires proof of the existence of an enterprise affecting interstate commerce.  No such proof is required for a drug conspiracy conviction.  Thus, a conviction for conspiracy to import cocaine, as charged in Redball II, requires proof of facts that the RICO charge does not.

Notwithstanding the unique elements required to prove RICO and drug conspiracy violations, Mark argues that a double jeopardy violation exists.  Mark's argument proceeds on the assumption that the predicate acts that he is alleged to have committed in the RICO indictment not only replicate distinct substantive offenses with which he is charged in the Redball indictment, but also constitute renewal, or double prosecution, of that substantive charge in the RICO indictment.  That assumption is erroneous and devoid of any legal significance for double jeopardy purposes.

The United States Court of Appeals for the Second Circuit has addressed a similar issue in *United States v. Polanco*, 145 F.3d 536 (2d Cir. 1998).  In that case, the defendant Polanco was convicted for violating the RICO statute as well as for committing murder and attempted murder.  The murder and attempted murder charges were substantive offenses as well as predicate acts for the RICO charge.  Upon his conviction, Polanco was

sentenced to consecutive sentences for the RICO, murder, and attempted murder convictions. Polanco challenged his consecutive sentences as violating the Double Jeopardy clause. In rejecting his claim, the Second Circuit noted, "'it is well settled that Congress sought to permit cumulative sentences for a RICO conviction and the predicate offenses upon which the RICO violation is premised.'" *Id.* at 542 (quoting *United States v. Walsh*, 700 F.2d 846, 856 (2d Cir. 1983).

The court held that there was no error in imposing consecutive sentences for both Polanco's RICO conviction and his substantive convictions. *Id.; see also United States v. Bellomo*, 954 F. Supp 630, 646 (S.D.N.Y. 1997) ("As a RICO violation is an offense separate and apart from the predicate acts, it cannot be said that prosecution on RICO charges based on a predicate act which resulted in a prior substantive conviction is a second prosecution, or that a RICO conviction results in multiple punishment, 'for the same offense' as the predicate act. . . . Any different view would be inconsistent with the premise that the RICO offense is an offense distinct from the underlying predicate acts.").

Here, as in *Polanco*, there is no Double Jeopardy violation.

## IV. CONCLUSION

For the foregoing reasons, the Court will **DENY** Mark's motions to dismiss Count Two of this matter.

S\_____
**CURTIS V. GÓMEZ
Chief Judge**